ORIGINAL

FILED
APR 3 2008
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ALABAMA POWER COMPANY; GEORGIA POWER COMPANY; AND SOUTHERN NUCLEAR OPERATING COMPANY, INC.,

Plaintiffs,

v.

THE UNITED STATES OF AMERICA,

Defendant.

No. 08-237 C

**COMPLAINT**

Plaintiffs, Alabama Power Company ("APC"), Georgia Power Company ("GPC"), and Southern Nuclear Operating Company, Inc. ("Southern Nuclear") (collectively, the "Companies"), file this Complaint, through their undersigned counsel, against the Defendant, the United States of America (the "Government"), and state as follows:

**NATURE OF THE CASE**

1. Under the Nuclear Waste Policy Act of 1982, 42 U.S.C. § 10101 et seq. ("NWPA"), the United States Government, acting through the Department of Energy ("DOE"), entered into Standard Contracts for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (the "Standard Contracts") with the Plaintiff Companies under which the Companies would pay fees in exchange for the Government's acceptance, beginning no later than January 31, 1998, of the spent nuclear fuel ("SNF") generated by the commercial nuclear power plants operated by Southern Nuclear.

2. The Companies have paid, and continue to pay, all the fees required under the Standard Contracts, but the Government did not begin picking up the SNF by January 31, 1998 and still has not picked up any SNF.

3. On July 29, 1998, the Companies filed an action against the Government in this Court for, among other things, partial breach of contract and breach of the implied covenants of good faith and fair dealing. Southern Nuclear Operating Co., et al. v. United States, No. 98-614 (Fed. Cl.) (Merow, S.J.).

4. On April 7, 2004, this Court granted summary judgment to the Companies, holding that the Government was liable for a partial breach of the Standard Contracts with the Companies. (Order, Apr. 7, 2004, Dkt. 234). On July 9, 2007, after a trial on damages incurred through December 31, 2004, this Court entered judgment on damages awarding Alabama Power Company $17,278,000, and Georgia Power Company $59,919,080. Southern Nuclear Operating Co. v. United States, 77 Fed.Cl. 396, 460 (Fed.Cl. 2007). On November 1, 2007, this Court denied the Government's motion for reconsideration. (Order, Nov. 1, 2007, Dkt. 369).

5. On January 2, 2008, the Government appealed this Court's judgment and order denying consideration to the Federal Circuit. On January 10, 2008, the Companies cross appealed.

6. In its final judgment, this Court stated: "In accord with Restatement (Second) of Judgments § 26(b)(1) and (e), plaintiffs may bring a subsequent action(s) for damages incurred after December 31, 2004. Indiana Michigan [Power Co. v. United States], 422 F.3d [1369,] 1377-78 (Fed. Cir. 2005)." Southern Nuclear, 77 Fed. Cl. at 460.

7. In accordance with the instruction of the Federal Circuit in Indiana Michigan, 422 F.3d at 1377-78, and of this Court in Southern Nuclear, 77 Fed. Cl. at 460, the Companies now

bring this action for the Government's continued failure to perform its obligations under the Standard Contracts and the resulting damages incurred after December 31, 2004.

**PARTIES**

8. Plaintiff Alabama Power Company ("APC") is a corporation organized and incorporated under the laws of the State of Alabama. Plaintiff APC is the owner of the Joseph M. Farley Nuclear Plant, Units 1 and 2 ("Farley").

9. Plaintiff Georgia Power Company ("GPC") is a corporation organized and incorporated under the laws of the State of Georgia. Plaintiff GPC and Municipal Electric Authority of Georgia, the City of Dalton, Georgia, and Oglethorpe Power Corporation own the Edwin I. Hatch Nuclear Plant, Units 1 and 2 ("Hatch"), and the Vogtle Electric Generating Plant, Units 1 and 2 ("Vogtle"). Each of the owners of the Vogtle and Hatch reactors owns an undivided percentage of the plants pursuant to Participation Agreements, in accordance with which GPC, directly and through Southern Nuclear, funds the operations and maintenance expenses for the plants and enters into contracts, including the Standard Contracts.

10. Plaintiff Southern Nuclear Operating Company, Inc. ("Southern Nuclear") is a corporation organized and incorporated under the laws of the State of Delaware. Southern Nuclear is the licensed operator of the Farley, Hatch, and Vogtle Nuclear Plants. Southern Nuclear is "the agent and attorney in fact" for APC under § 2.01(b) of the APC Nuclear Operating Agreement, and for GPC under §§ 2.1 and 2.11 of the GPC Nuclear Operating Agreement. Accordingly, Southern Nuclear is responsible for, among other things, possession, management, control, operation, maintenance, shutdown and decommissioning of the plants including, but not limited to: (1) execution, administration and enforcement of contracts for the

purchase of nuclear fuel and fuel services, which include the storage and disposal of SNF, necessary for the operation of those plants; and (2) management and storage of SNF generated by the plants until such time as it is removed by the Government pursuant to the Standard Contracts. By letters dated February 22, 1991, DOE was advised of the incorporation of Southern Nuclear and its role in administering the Standard Contracts for APC and GPC. (Copies of the letters are attached as Exhibits 1-3). As such, Southern Nuclear is a plaintiff in a representational capacity.

11. Defendant is the United States of America (the "Government"), acting by and through DOE.

## JURISDICTION

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1491(a)(1).

13. In Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336, 1342 (Fed. Cir. 2000), the Federal Circuit rejected the Government's argument that a nuclear utility did not have to exhaust administrative remedies before bringing an action against DOE for breach of a Standard Contract because the contract disputes clause of the Standard Contract, which applied to certain delays, did not apply to DOE's industry-wide breach of its obligation to accept SNF. Id. at 1342 ("The breach involved all the utilities that had signed the contract -- the entire nuclear electric industry. The language of the avoidable delays provision of the contract cannot properly be read to cover Yankee's claim."). See Northern States Power Co. v. United States, 224 F.2d 1361, 1367 (Fed. Cir. 2000) ("[W]e hold that the unavoidable delays provision deals with delays arising after performance of the contract has begun, and does not bar a suit seeking damages for

the government's failure to begin performance at all by the statutory and contractual deadline of January 31, 1998.").

14. In PSEG Nuclear, L.L.C. v. United States, 465 F.3d 1343, 1349 (Fed. 2006), the Federal Circuit rejected the Government's argument that the Court of Federal Claims lacked jurisdiction over a nuclear utility's claim for breach of the Standard Contract because section 119 of the NWPA vested such jurisdiction in the District of Columbia Circuit. The Federal Circuit concluded that section 119 vested the D.C. Circuit with jurisdiction only over DOE "actions mandated under Title III which relate to the creation of repositories for spent nuclear fuel." The Federal Circuit then stated: "we hold that the Court of Federal Claims has jurisdiction under the Tucker Act [28 U.S.C. § 1491(a)(1)] to hear PSEG's breach of contract claims." Id. at 1351.

## FACTUAL BACKGROUND

### The Standard Contract

15. Pursuant to § 302(a) of NWPA, DOE developed and executed Standard Contracts with nuclear utilities. The Standard Contracts incorporate a reciprocal obligation on the part of the Government, acting through DOE, to accept the SNF from commercial utilities beginning no later than January 31, 1998, in exchange for the payment of fees by such utilities into the Nuclear Waste Fund.

16. The Standard Contract between the Government and APC for Plant Farley was executed on June 13, 1983; and the Standard Contracts between the Government and GPC for Plants Hatch and Vogtle, respectively, were executed on June 10, 1983. (Copies of the Standard Contracts are attached as Exhibits 4-7).

17. The Standard Contracts require DOE to commence removal of SNF from the Companies' plant sites not later than January 31, 1998, in exchange for the Companies' payment of fees into the Fund.

18. Moreover, DOE's storage of foreign research reactor fuel at DOE sites demonstrates that there is no technological or logistical reason it could not have already begun to accept, transport and store domestic SNF by the January 31, 1998 deadline.

19. APC and GPC have paid all the fees required by the Standard Contracts. Specifically, APC has paid in the aggregate more than 315.3 million dollars ($315,300,000) in fees to DOE, and GPC has paid in the aggregate more than 640.2 million dollars ($640,200,000) in fees to the Government as of December 31, 2007. APC continues to pay fees in the aggregate of approximately 13 million dollars ($13,000,000) per year and GPC continues to pay fees in the aggregate of approximately 32 million dollars ($32,000,000) per year.

**DOE's Partial Breaches of the Standard Contracts**

20. DOE failed to meet the January 31, 1998 deadline for commencing the removal of SNF from the Companies' plant sites and, at that time, estimated that it would not begin to remove SNF from plant sites until 2010.

21. A number of nuclear utilities, including the Companies, filed actions in this Court alleging, among other things, partial breach of the Standard Contracts and breach of the implied covenants of good faith and fair dealing by DOE. The Companies filed their complaint on July 29, 1998. Southern Nuclear Operating Co., et al. v. United States, No: 98-614 (Fed. Cl.) (Merow, S.J.).

22. In Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336, 1343 (Fed. Cir. 2000), the Federal Circuit held that "the parties do not dispute that Yankee has paid all the

contract fees and . . . that DOE has not begun accepting, transporting, and disposing of Yankee's SNF. Accordingly, DOE has breached the contract." (Internal quotation marks omitted.)

23. On April 7, 2004, this Court granted summary judgment to the Companies, holding that "the Government partially breached the Standard Contracts executed by APC and GPC and plaintiffs' October 2, 1998 motion [for summary judgment] shall be granted accordingly as to the issue of contract liability." (Order, Apr. 7, 2004, No. 98-614, Dkt. 234.)

24. Pursuant to Rule 15(d), RCFC, the Companies submitted an Amended and Supplemental Complaint for damages through December 31, 2004, that this Court deemed filed as of October 11, 2005. (Order, Oct. 26, 2005, Dkt. 315.) On September 16, 2005, the Court ordered that "[t]he scope of the trial proceedings in this matter will comprise damage evidence up to and including December 31, 2004." (Order, Sept. 16, 2005, Dkt. 304, 2.)

25. This Court's final judgment of July 9, 2007 awarded APC $17,278,000, and GPC $59,919,080 for damages incurred through December 31, 2004. Southern Nuclear Operating Co. v. United States, 77 Fed.Cl. 396, 460 (Fed. Cl. 2007).

26. In its final judgment, this Court stated: "In accord with Restatement (Second) of Judgments § 26(b)(1) and (e), plaintiffs may bring a subsequent action(s) for damages incurred after December 31, 2004. Indiana Michigan [Power Co. v. United States], 422 F.3d [1369,] 1377-78 (Fed. Cir. 2005)." Southern Nuclear, 77 Fed. Cl. at 460.

27. Since December 31, 2004, DOE has abandoned its previously projected 2010 date for beginning performance under the Standard Contracts on an industry-wide basis. Currently, DOE's "best-achievable repository construction schedule" estimates that DOE will begin removing SNF in March 2017. See Office of Civilian Radioactive Waste Management,

Best-Achievable Repository Construction Schedule, available at http://www.ocrwm.doe.gov/ym_repository/about_project/index.shtml.

28. The Standard Contract provides:

> The services to be provided by DOE under this contract shall begin, after commencement of facility operations, not later than January 31, 1998 and shall continue until such time as all SNF and/or HLW from the civilian nuclear power reactors specified in Appendix A, annexed hereto and made a part hereof, has been disposed of.

10 C.F.R. § 961.11, Standard Contract, Art. II (emphases added).

29. DOE did not begin its acceptance of SNF for disposal by January 31, 1998, did not begin such acceptance on January 1, 2005, has still not begun such acceptance, and has not disposed of any, much less all, SNF from the Companies' nuclear plant sites. Therefore, the Government continues to partially breach of its obligations under the Standard Contracts and its implied covenants of good faith and fair dealing.

## NATURE OF DAMAGES SUSTAINED BY THE COMPANIES AS A RESULT OF DOE'S BREACH

30. As a direct result of the Government's partial breach, the Companies have suffered additional damages as of January 1, 2005, and will continue to suffer substantial damages in the form of costs associated with the management and storage of SNF that DOE should have removed. These damages include, but are not limited to, capital costs for construction of additional storage facilities, operations and maintenance costs associated with storage facilities; costs associated with the planning, design, construction, licensing, operation and maintenance of associated facilities; increased decommissioning costs; and other administrative and programmatic costs arising directly from the continuing failure of the

Government to remove SNF from the Companies' plant sites as required by the Standard Contracts.

31. As a direct, proximate, and substantial result of the Government's continuing partial breach of the Companies' Standard Contracts and the implied covenants of good faith and fair dealing, the Companies have incurred substantial damages, in an amount to be determined at trial.

## CLAIMS FOR RELIEF

## COUNT I
## Partial Breach of Contract

32. The Companies reallege and incorporate by reference Paragraphs 1-31 above.

33. The Standard Contracts impose an unconditional obligation on the Government to remove and dispose of the SNF generated by the Companies' nuclear plants beginning not later than January 31, 1998, in return for the payment of specified waste fees.

34. The Companies have paid all such fees to the Government in accordance with the terms and schedule set forth in the Standard Contracts.

35. The Government has defaulted and continues to default on its obligation promptly to remove the Companies' SNF from their plaint sites. All of the Companies' contract claims in this action are solely for damages arising out of the Government's failure or delay in performance, which constitutes a partial and material breach of contract.

36. As a direct and proximate result of the Government's partial breach of contract, the Companies have incurred and will continue to incur substantial damages in an amount to be determined at trial.

**COUNT II**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**

37. The Companies reallege and incorporate by reference Paragraphs 1-36 above.

38. The Standard Contracts contain implied covenants of good faith and fair dealing, pursuant to which the Government has a duty to perform its contractual obligations in good faith and refrain from taking actions detrimental to the rights of the Companies.

39. The implied covenants of good faith and fair dealing required the Government to make reasonable efforts to perform its duties under the Standard Contracts and to cooperate with the Companies in the accomplishment thereof.

40. DOE breached the covenants of good faith and fair dealing by failing and refusing to accept and take title to the SNF, by failing and refusing to remove and store or otherwise dispose of the SNF, by failing and refusing to take appropriate actions to ensure that DOE would remove and store or otherwise dispose of the SNF, by otherwise unreasonably failing and refusing to perform its obligations under the Standard Contracts, by routinely attempting to avoid its obligations under the Standard Contracts, and by repeatedly insisting on the continued performance of their contracts by the Companies despite DOE's own continued refusal and failure to perform.

41. In contrast to the Government's failure to take any action to meet its contractual commitments to domestic utilities, the Government has taken action to receive, transport and store SNF from other entities. For example, the Government continues to accept and store SNF from foreign research reactors.

42. As a direct and proximate result of the Government's breach of the covenants of good faith and fair dealing, the Companies have incurred and will continue to incur in the future substantial damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Companies respectfully request the Court to enter judgment in their favor and against the United States as follows:

(a) On Count I, for damages in an amount to be determined at trial;

(b) On Count II, for damages in an amount to be determined at trial;

(c) Pre-judgment and post-judgment interest as permitted by law; and

(d) Any other relief that the Court may determine is appropriate.

Respectfully submitted,

Dated: April 2, 2008

M. Stanford Blanton
BALCH & BINGHAM LLP
1710 Sixth Avenue North
Birmingham, AL 35203
Tel.: 205-226-3417
Fax: 205-226-8798

*COUNSEL OF RECORD FOR PLAINTIFFS*

Of Counsel:

Ed R. Haden
Peter D. LeJeune
K.C. Hairston
BALCH & BINGHAM LLP
1710 Sixth Avenue North
Birmingham, AL 35203
Tel.: (205) 251-8100
FAX: (205) 226-8798

Ronald A. Schechter
Jeffrey L. Handwerker
Matthew M. Shultz
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1202
Tel.: (202) 942-5000
FAX: (202) 942-5999

## INDEX OF EXHIBITS

1. Letter from R.P. McDonald, Executive Vice President, Alabama Power Company, to U.S. Department of Energy, dated February 22, 1991.

2. Letter from R.P. McDonald, Executive Vice President -- Nuclear, Georgia Power Company, to U.S. Department of Energy, dated February 22, 1991.

3. Letter from R.P. McDonald, Executive Vice President -- Nuclear, Georgia Power Company, to U.S. Department of Energy, dated February 22, 1991.

4. July 11, 1983 Letter from M.D. Rickels, Supervisor -- Nuclear Fuels and Contracts -- to B.E. Hunt, Southern Company Services, Inc., forwarding executed contract number DE-CRO1 -83NE44361 between Alabama Power Company and the United States.

5. June 29, 1983 Letter from Thomas S. Keefe, Contracting Officer, to R.J. Kelly, Executive Vice President, Georgia Power Company, forwarding executed contract number DE-CRO1-83NE44479 between Georgia Power Company and the United States.

6. June 29, 1983 Letter from Thomas S. Keefe, Contracting Officer, to R.J. Kelly, Executive Vice President, Georgia Power Company, forwarding executed contract number DE-CRO1-83NE44386 between Georgia Power Company and the United States.

7. June 29, 1983 Letter from Thomas S. Keefe, Contracting Officer, to R.J. Kelly, Executive Vice President, Georgia Power Company, forwarding executed contract number DE-CRO1-83NE44478 between Georgia Power Company and the United States.