IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ALABAMA POWER COMPANY; GEORGIA POWER COMPANY; and SOUTHERN NUCLEAR OPERATING COMPANY, INC., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 08-237C (Senior Judge Merow) |
| UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO STAY

Pursuant to Rule 7(b) of the Rules of the Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court stay all proceedings in this matter, including, but not limited to, defendant's obligations to respond to the complaint, until resolution of the pending appeal in Southern Nuclear Operating Co. v. United States, Nos. 2008-5020, -5028 (Fed. Cir. docketed Jan. 3, 2008) ("Southern Nuclear I"), as well as the pending appeals in Yankee Atomic Electric Co. v. United States, No. 07-5025 (Fed. Cir.) ("Yankee Atomic"); Sacramento Municipal Utility District v. United States, No. 07-5052 (Fed. Cir.) ("SMUD"); Pacific Gas & Electric Co. v. United States, Nos. 07-5046 (Fed. Cir.) ("PG&E"); and, Nebraska Public Power District v. United States, No. 2007-5083 (Fed. Cir.) ("NPPD"). Issues that are raised by the plaintiffs in this case ("Southern Nuclear II") are being addressed in each of these appeals, and it would be inefficient and potentially unjust to allow matters to proceed in this case while those same issues are being resolved by the United States Court of Appeals for the Federal Circuit.

Counsel for plaintiffs, Alabama Power Company, Georgia Power Company and Southern Nuclear Operating Company (collectively "plaintiffs), has represented that plaintiffs do not consent to any stay of the proceedings in this matter.

BACKGROUND

This case is one of a number of cases that have been filed in this Court regarding the Government's delay in beginning acceptance of spent nuclear fuel ("SNF") pursuant to the Standard Contract for Disposal of Spent Nuclear Fuel And/Or High-Level Radioactive Waste ("Standard Contract"), 10 C.F.R. § 961.11 (1983). The Standard Contract that was signed by all the SNF plaintiffs is essentially identical and each case presents the same issues relating to the rate and schedule of acceptance. Most of the SNF plaintiffs are seeking damages for their additional costs of storing SNF because of DOE's failure to begin acceptance pursuant to the Standard Contract.

This Court conducted a two-week trial in October 2005 in Southern Nuclear I, considering plaintiffs' claims for damages that had accrued through December 31, 2004. On July 9, 2007, the Court issued an opinion awarding Alabama Power $17,278,000 and Georgia Power $59,919,080 in damages. The Court denied our motion for reconsideration on November 1, 2007. The damage award reimbursed Alabama Power and Georgia Power for the costs incurred to construct additional storage facilities at their sites. The Court denied plaintiffs claims for $8.5 million related to plaintiffs' investment in a private limited liability company known as Private Fuel Storage, LLC ("PFS") created by a consortium of utilities to store spent fuel at a site other than a Federal facility, as well as more than $28 million for the cost of capital. The United States has appealed the Court's judgment, and the plaintiffs have filed a cross-appeal.

Plaintiffs filed their complaint in Southern Nuclear II on April 3, 2008, seeking damages incurred after December 31, 2004.[1]

Many of the issues implicated by plaintiffs' complaint in Southern Nuclear II are already before the Federal Circuit. Oral argument was held on February 4, 2008, before a single panel of judges in the appeals of PG&E, Yankee Atomic, and SMUD. These appeals are expected to resolve (or, at a minimum, address critical questions related to) the following issues implicated by the complaint in Southern Nuclear II: (1) the rate of acceptance of spent fuel required by the Standard Contract and the necessity of resolving that issue in evaluating damages claims; (2) the allocation of the burden, in an expectation damages case, to establish a world in which there would be performance and whether the "substantial causal factor" test obviates the need to establish such a world; and (3) the standard for the recoverability of company expenditures, such as internal labor and overhead costs, that the Government contends would have been incurred in the absence of a breach.

In Nebraska Public Power District v. United States, 73 Fed. Cl. 650, 674 (2006), appeal pending, No. 2007-5083 (Fed. Cir.), this Court ruled that the writ of mandamus preventing the Government from relying upon the "Unavoidable Delays" clause of the Standard Contract was void ab initio because court that issued it lacked jurisdiction to do so. The Federal Circuit

---

[1] Four other utilities have already filed lawsuits in this Court seeking damages incurred after the period covered by their initial lawsuit (Northern States Power Co. v. United States, Fed. Cl. No. 07-608C; Yankee Atomic Electric Co. v. United States, Fed. Cl. No. 07-876; Connecticut Yankee Atomic Power Co. v. United States, Fed. Cl. No. 07-875; and Maine Yankee Atomic Power Co. v. United States, Fed. Cl. No. 07-877). Each of those cases has been stayed by the Court pending the issuance of decisions by the Federal Circuit on the previous suits brought by those utilities.

granted the plaintiff's petition in Nebraska for permission to appeal that interlocutory decision, and the briefing in that case has been completed. Oral argument was held on December 3, 2007.

The Government has also appealed the Court's decision in Southern Nuclear I, and plaintiffs have filed a cross-appeal. The Federal Circuit has stayed briefing in that appeal until the appeals in PG&E, Yankee Atomic, and SMUD are decided. To the extent that issues remain after these other appeals are decided, the Government's appeal in Southern Nuclear I could implicate the issues specified above as well as the trial court's determination that the Government has waived its ability to rely upon the "Unavoidable Delays" clause. Based upon the docketing statement filed by plaintiffs, we expect plaintiffs' cross-appeal in Southern Nuclear I to address issues regarding the recoverability of plaintiffs' investment in PFS and the cost of capital.

## ARGUMENT

### I. THE COURT SHOULD STAY THIS CASE PENDING FINAL RESOLUTION BY THE FEDERAL CIRCUIT OF ISSUES DIRECTLY RELEVANT TO THIS CASE

#### A. The Standard For Considering A Stay

This Court has the inherent power to stay proceedings, and may do so with the "exercise of judgment, which must weigh competing interests and maintain an even balance." Landis v. North American Co., 299 U.S. 248, 255 (1936). The Court applies a three-part test in deciding a motion to stay one proceeding pending the resolution of a separate proceeding. A stay is proper if: (1) the cases involve "substantially similar" or "related issues;" (2) the requesting party will suffer hardship or inequity if required to go forward; and (3) the requested stay is not of immoderate duration. C3, Inc. v. United States, 5 Cl. Ct. 659, 660 (1984) (citing Landis, 299 U.S. at 255). The circumstances presented by this case readily satisfy each of the criteria and,

therefore, merit the entry of a stay during the pendency of the appeals in NPPD, PG&E, Yankee Atomic, SMUD, and Southern Nuclear I.

B. A Stay Is Appropriate At This Time

1. This Matter Is Closely Related To The Existing And Potential Appeals To The Federal Circuit

There can be no serious dispute that the appeals to the Federal Circuit pending which we seek to stay this case are closely related to Southern Nuclear I. As an initial matter, the issues on appeal in Yankee, PG&E, and SMUD, as well as the issues likely to be appealed from the Court's judgment in Southern Nuclear I, including the rate of acceptance and the proper causation standard to be applied, will likely control the Court's decision in Southern Nuclear II. It defies common sense to reach these issues in Southern Nuclear II when the identical issues are likely to be resolved by the Federal Circuit in the pending appeals. The Federal Circuit's determination with respect to these issues will be binding upon this Court, and there is no reason to require the parties either to relitigate these issues anew or to proceed under a set of assumptions that may be undermined on appeal. Either scenario could result in a waste of the parties' and the Court's scare resources.

Moreover, the issues raised in the appeals already before the Federal Circuit are closely intertwined with those raised in Southern Nuclear II. As the Court is aware, the terms of all of the Standard Contracts were promulgated in the same manner through notice-and-comment rulemaking, and the interactions between DOE and the nuclear industry as a whole led to the promulgation of the contract. As a result, any determinations about the rate of acceptance required by the Standard Contract will be of direct significance to the course of the proceedings and the calculation of damages, if any, in Southern Nuclear II. See Restatement (Second) of

Contracts § 211 (1981) (standardized contracts are to be interpreted and applied in same manner for all contract parties, regardless of individual contract holder's understanding or knowledge). Indeed, we expect that the calculation of damages in Southern Nuclear II will vary depending in part upon the identification of the minimum rate of acceptance required by the Standard Contract, an issue that we expect the Federal Circuit to address in resolving the appeals in PG&E, SMUD, Yankee Atomic, and Southern Nuclear I. Similarly, any rulings by the Federal Circuit about the availability of a defense based upon the "Unavoidable Delays" clause of the Standard Contract (as well as the contours of such a defense) will assist in determining whether (and how) such a defense can be raised in Southern Nuclear II. Finally, plaintiffs' expected cross-appeal regarding the recoverability of the cost of capital and PFS should determine that issue for all future claims brought by plaintiffs.

2. Absent A Stay, The Government Will Incur Substantial Hardship

The situation presented in this matter amply supports a finding that the Government would suffer great hardship if our motion for a stay were to be denied.

First, fundamental fairness demands consistency in the resolution of cases with the same operative facts. See Restatement (Second) of Contracts § 211 (1981). Without a stay, there is a substantial likelihood that there will be inconsistent rulings relating to the terms of the Standard Contract, the burden of proof required by a spent nuclear fuel plaintiff seeking to establish its entitlement to damages, and the types of damage to which such a plaintiff is entitled. At a minimum, there is substantial likelihood that the parties will incur unnecessary expenses litigating Southern Nuclear II in a manner that is inconsistent with the interpretation of the Standard Contract and the identification of the burden of proof that the Federal Circuit adopts in

the SNF cases that are currently before it, including Southern Nuclear I. Respect for the sanctity of the appeals process and for the scarcity of judicial resources compels the conclusion that Southern Nuclear II should be stayed until the Federal Circuit determines whether the Court applied the proper framework for measuring damages in Southern Nuclear I and the other SNF cases currently on appeal.

Second, because of the writ of mandamus issued by the District of Columbia Circuit, the Government has to date been denied the opportunity to assert a defense under the "Unavoidable Delays" clause, which, if deemed applicable, would on its face provide a complete defense to liability for the plaintiffs' claims. Requiring this case to move proceed before the availability of this defense has been addressed by the Federal Circuit in NPPD would further deprive the Government of the opportunity to assert a right for which it bargained when the parties agreed to the Standard Contract. Although we are sensitive to plaintiffs' concern that they will incur a hardship if a stay is imposed because they cannot recover prejudgment interest against the Government, plaintiffs have already obtained a judgment of in excess of $77 million in Southern Nuclear I in a case in which the Government could not rely upon the "Unavoidable Delays" clause and, thus, was restricted in its ability to defend itself. The amount of prejudgment interest that plaintiffs would forego if a stay issues pales in comparison to the hardship that the Government has already incurred and will incur in the future as a result of judgments entered before its ability to assert a defense based upon the "Unavoidable Delays" clause has been adjudicated.

3. The Requested Stay Is Of A Reasonable Duration

The final determination that the Court must make in deciding whether to grant a stay is whether the requested stay will be of a reasonable duration.

We do not presume to predict when the Federal Circuit will be ready to issue appellate guidance in the pending appeals. However, granting a stay until resolution of those appeals is reasonable for much the same reason that granting a stay in this case is equitable. The purpose of the stay is to obtain guidance as to the proper resolution of the issues in every SNF case. It is in every party's interest for the cases that have already been developed and adjudicated to be reviewed by the Federal Circuit, thereby providing guidance and permitting a more efficient and cost effective resolution of the other cases, including Southern Nuclear II. Therefore, waiting a relatively short period of time to receive that guidance based upon final resolution of the appeals of NPPD, PG&E, Yankee Atomic, SMUD, and Southern Nuclear I is reasonable.

CONCLUSION

For these reasons, we respectfully request that the Court enter an order granting this motion to stay all proceedings in this matter until the Federal Circuit issues opinions resolving the appeals of NPPD, PG&E, Yankee Atomic, SMUD, and Southern Nuclear I. If the Court declines to issue a stay, we respectfully request that the Court enlarge the time to answer the complaint in this action to a date 14 days after the date of the order denying our motion.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Marian E. Sullivan
MARIAN E. SULLIVAN
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington D.C. 20530
Tele: (202) 307-0365
Fax: (202) 307-2503

July 17, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that, on this 17th day of July, 2008, a copy of foregoing "DEFENDANT'S MOTION FOR A STAY," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Marian E. Sullivan