IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ALABAMA POWER COMPANY; GEORGIA POWER COMPANY; AND SOUTHERN NUCLEAR OPERATING COMPANY, INC., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 08-237C (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFFS ALABAMA POWER COMPANY, GEORGIA POWER COMPANY, AND SOUTHERN NUCLEAR OPERATING COMPANY'S OPPOSITION TO DEFENDANT GOVERNMENT'S MOTION TO STAY**

Plaintiffs Alabama Power Company, Georgia Power Company, and Southern Nuclear Operating Company, Inc. (collectively, "Southern") oppose the defendant Government's motion to stay proceedings in this case. First, the legal issues to be decided in other spent nuclear fuel ("SNF") cases currently on appeal to the Federal Circuit do not impact the next phase of this proceeding -- discovery of Southern's actual post-December 31, 2004 SNF storage costs. The Government's motion assumes that the legal issues being decided by the Federal Circuit could cause legal rulings at summary judgment or trial in this case that would be inconsistent with the forthcoming appellate decisions. But this case is not ready for summary judgment or trial. The parties first need to engage in discovery in preparation for this Court's audit process. Second, the burden on the Government of discovering Southern's post-2004 costs (*i.e.*, sending a discovery request) is slight. Third, given the inability to recover the time value of its expenditures from the United States as damages or interest on its judgment, the burden on Southern for delaying this case would be in the millions of dollars and such harm would be irreparable.

## ARGUMENT

The standard for whether a trial court should enter a stay when there is a related civil[1] case is as follows:

> The Court employs a three part test in deciding whether to stay a case. First, a trial court must identify a **pressing need** for the stay. Second, "[t]he court must balance the interests favoring a stay against interests frustrated by the action." "Overarching this balancing is the court's **paramount obligation to exercise jurisdiction timely** in cases properly before it." Cherokee Nation of Okla. [v. United States], 124 F.3d [1413,] 1416 [(Fed. Cir. 1997)]. When a related case is pending before another court, a trial court may also consider: "(i) principles of comity, with the normal rules favoring the court in which a case is first filed, (ii) **judicial economy**, focusing, inter alia, on whether a stay is necessary to avoid duplicative litigation, and (iii) the motives of the party seeking the stay, with courts disfavoring stays where the movant is seeking to avoid adverse precedent." Commonwealth Edison Co. v. United States, 46 Fed. Cl. 29 (2000).

Cellco Partnership v. United States, 54 Fed. Cl. 260, 262 (2002) (emphases added).[2]

---

[1] The standard partially quoted by the Government in its Motion at page 4 is used when there is a related criminal investigation or case:

> (1) whether a clear showing has been made by defendant, by indirect proof, that the issues in the civil action are "substantially similar" or "related" to the issues in the criminal investigation;
>
> (2) whether defendant has made a clear showing of hardship or inequity if required to go forward with the civil case while the criminal investigation is pending; and
>
> (3) whether the duration of the requested stay is immoderate.

C3, Inc. v. United States, 5 Cl. Ct. 659, 660 (1984) (emphases added). In C3, Inc., id., the Government moved for a stay when its case was related to a pending grand jury criminal investigation and Federal Rule of Criminal Procedure 6 prevented disclosure of grand jury evidence. The appeals to which this case is related, however, do not involve the protective legal procedures inherent in criminal proceedings that drive the permissive, "hardship or inequity" standard for stays. Instead, the policy of this Court's "paramount obligation to exercise jurisdiction timely" where there are related civil cases supports the more strict, "pressing need" standard for justifying a stay in this case. Cellco, 54 Fed. Cl. at 262.

[2] In Folden v. United States, 379 F.3d 1344, 1358 (Fed. Cir. 2004), the Federal Circuit overruled another ground of Cellco, stating: "to the extent that the decision suggests that the Court of Federal Claims may exercise concurrent jurisdiction with the D.C. Circuit over claims that fall within the scope of subsection 402(b) [of the Communications Act], we reject it."

## I. There Is No "Pressing Need" to Stay Discovery of Actual SNF Storage Costs That Will Not Change Regardless of the Federal Circuit's Rulings on Legal Issues.

The Government contends that a stay is warranted because the appeals before the Federal Circuit should resolve (1) the rate of acceptance of SNF; (2) the legal causation test and resulting burdens of proof; and (3) the standard of recovery of internal labor and overhead costs. (Gov.'s Mot. 3.) See Southern Nuclear Operating Co. v. United States, Nos. 2008-5020, -5028 (Fed. Cir.); Yankee Atomic Electric Co. v. United States, No. 07-5025 (Fed. Cir.) ("Yankee Atomic"); Sacramento Municipal Utility District v. United States, No. 07-5052 (Fed. Cir.) ("SMUD"); Pacific Gas & Electric Co. v. United States, Nos. 07-5046 (Fed. Cir.) ("PG&E"); NebraskaPublic Power District v. United States, No. 2007-5083 (Fed. Cir.) ("NPPD") (collectively, the "SNF Appeals").

In the previous litigation over Southern's contracts, the Court ordered the parties to undertake a comprehensive audit of Southern's damages. This audit resulted in the elimination of all material fact issues regarding the costs incurred by Plaintiffs in constructing and implementing on-site SNF storage.

The issues on appeal are no reason to delay this comprehensive and productive process. While delaying dispositive rulings in this case for issues that are on appeal in other cases could clarify several of the legal issues the Government has raised in defense of these claims, proceeding with discovery would eliminate delay and the substantial prejudice to Southern. Given the Court's ruling that Southern's cost of capital is not recoverable from the United States and the unavailability of pre-judgment interest, the burden on Southern from a stay is far greater than the burden on the Government from proceeding with the discovery and audit process.

Accordingly, the issues on appeal present no "pressing need" for a stay. See Cellco, 54 Fed. Cl. at 262.

### A. The Federal Circuit's Rate of Acceptance Determination Will Not Impact Discovery of Actual Damages Evidence.

The rate of acceptance is used to compute the hypothetical amount of SNF that DOE would have accepted had it performed under the standard contracts and thus the amount that Southern would have spent on storage facilities had DOE performed. To compute compensatory damages, these hypothetical storage costs are compared to the costs that Southern actually incurred to purchase and build its on-site storage facilities after DOE actually breached the standard contracts and accepted no SNF. See Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1373 (Fed. Cir. 2005) ("The remedy for breach of contract is damages sufficient to place the injured party in as good a position as it would have been had the breaching party fully performed."). The first step is discovery of what Southern has actually spent on SNF storage facilities since 2004. What Southern has actually spent to date (e.g., cancelled checks for storage casks) is a matter of fact that will not change whether the Federal Circuit selects an annual SNF acceptance rate of 900 MTUs or 3,000 MTUs. Indeed, the Government conceded, and the Court found as a fact, in the first litigation between the parties to this contract that the rate of acceptance advocated by the Government would not impact Alabama Power Comany's damages. See Southern Nuclear Operating Co. v. United States, 77 Fed.Cl. 396, 439.(2007) [hereinafter "Southern Nuclear I"].

Southern, not the Government, has the discoverable records of what storage facilities Southern has purchased and built and how much it has paid for them. Review of Southern's costs will have to be done regardless of the outcome of the appeals of the previous cases. There

is no need, pressing or otherwise, and no justification to stay discovery of these facts that will be needed to resolve this case regardless of the acceptance rate.

### B. The Federal Circuit's Determination of the Legal Causation Standard Will Not Impact Discovery of Actual Damages Evidence.

The legal causation standard is used to determine the burdens of proof and whether a party has presented sufficient evidence to prove that the portion of the actual expenditures it claims as damages were caused by the breach of the contract. See, e.g., Citizens Federal Bank v. United States, 474 F.3d 1314, 1318-19 (Fed. Cir. 2007) (discussing "substantial factor" and "but for" standards of causation). As the Government stated in arguing in support of a "but for" causation standard on page 24 of its opening brief in Yankee Atomic Electric Co. v. United States, Nos. 2007-5025, et al. (Fed. Cir.): "Without a 'but for' world against which to compare the activities and costs that were actually required following the breach, there is no basis for determining whether a particular cost or activity is an incremental result of DOE's delay, given that there is no basis for knowing what costs or activities would have been required absent the breach." Before the parties or this Court need determine the "but for" world to compare to the actual world, the parties should discover what the actual world costs are.

Commencement of the audit process for Southern's claim imposes no unusual burden on the Government, and presents no pressing need to stay discovery.

### C. The Federal Circuit's Determination of the Standard for Recovery of Internal Labor and Overhead Will Not Impact Discovery of Actual Damages Evidence.

The standard of recovery for internal labor and overhead costs involves whether Southern must show, in addition to the amount of costs incurred and that such costs were incurred on

breach-related projects, that such costs were incurred for employees who were, as a result of the breach, prevented from working on other specific projects unrelated to the breach. See Southern Nuclear I, 77 Fed. at 440-43 (stating Government's argument and rejecting it). What Southern has actually spent to date (e.g., cancelled checks for storage casks) is a matter of fact that will not change whether the Federal Circuit requires utilities to make additional showings to establish the incremental nature of internal labor and overhead costs allocable to breach-related projects or affirms this Court's approach.

### D. The Government Waived The Unavoidable Delays Defense In This Case.

The Government also contends that if it convinces the Federal Circuit in NPPD, that the D.C. Circuit acted outside its jurisdiction in ordering the Government to not raise its lack of a repository as a defense to DOE's breach of the standard contracts, and if it then convinces the Federal Circuit that the Government's own failure to complete the repository can be an excuse for breaching the standard contracts, it could avoid liability in this case. (Gov.'s Mot. 3-4.) Whatever success the Government might have in NPPD will have no effect in this case because this Court held that the Government "waived any defense of the unavoidable delays clause as well as the validity the writ of mandamus in Northern States Power Co. v. DOE, 128 F.3d 754 (D.C. Cir. 1997)." Southern Nuclear I, 77 Fed. Cl. at 458. Thus, liability is not at issue in this case; only damages. Moreover, even if the Government were entitled to present that defense in this case, it would still have to carry its burden of proof in this Court that its failure to perform was unavoidable under the terms of the contract – a fourth "if." Because the Government must overcome all of these "ifs," its need for a stay is not "pressing," but speculative.

Regardless of the outcome of the four "ifs" on the unavoidable delays issue, the burden of initiating discovery in preparation for the audit process will still be slight. Southern will bear the brunt of the work in collecting and submitting its books and records evidence of post-2004 damages to the Government. If the Government prevails on every issue in the SNF Appeals and on remand, then Southern would have expended substantial effort for nothing, not the Government and not this Court.

## II. This Court's "Paramount Obligation To Exercise Jurisdiction Timely" Outweighs The Government's Interest In Not Sending A Discovery Request.

The second step in determining whether to grant a stay when there is a related civil case is to "balance the interests favoring a stay against interests frustrated by the action. Overarching this balancing is the court's paramount obligation to exercise jurisdiction timely in cases properly before it." Cellco, 54 Fed. Cl. at 262 (internal quotation marks omitted). The Government's interest in staying the beginning of the discovery process is the minimal interest in avoiding the drafting and mailing of a discovery request. Southern's interest in proceeding with the case is to avoid the permanent loss, estimated at approximately $650,000 per month, of interest on the tens of millions of dollars it has spent since 2004 on storing SNF.

Because the Government's interest in avoiding discovery of Southern's costs is slight and Southern's interest in avoiding the irreparable harm of delay is substantial, the balance weighs against a stay. Moreover, the Court's "paramount obligation to exercise jurisdiction timely in cases properly before it" confirms the reasonableness of initiating the discovery process now. Cellco, 54 Fed. Cl. at 262.

## III. A Stay Will Not Promote Judicial Economy Because the Court's Role In the Discovery And Audit Process Is Minimal.

A stay at this time will not promote judicial economy because the Court will expend little, if any, resources during the beginning of the discovery and audit process. In Southern Nuclear I, this Court entered a pre-trial scheduling order on June 21, 2004 that explained the audit process, stating in part:

> It is obviously in the interests of both parties to save time and money by cooperating in the verification procedure for those items and figures which either party proposes to be introduced in evidence. . . . A verification will obviate the need for a party to introduce the supporting source material and resulting testimony. Trial evidence will be needed only for items and figures not verified after examination or audit during pretrial.
>
> . . . .
>
> Considering that plaintiffs [Southern] will proceed first at trial, it is concluded that plaintiffs shall so proceed in pretrial and initiate the audit process by providing defendant's counsel at the beginning of fact discovery, with a schedule(s) of the items and figures from plaintiffs' records which are to be utilized to support its claimed damages. This may be supplemented to an extent consistent with fully accomplishing the verification process during the pretrial period.

Southern Nuclear I, Case No. 98-614, Pretrial Order, Dkt. No. 241 (emphases added).

Given the parties' experience with the discovery and audit process in Southern Nuclear I, the parties should need even less direction from the Court in beginning the discovery and audit process in this case. The first part of the discovery process alone should take several months.

## CONCLUSION

In Cellco, 54 Fed. Cl. at 263, this Court denied the Government's motion to stay plaintiff's breach of contract case until two related appeals were decided. This Court concluded "that the concrete economic harm to the plaintiff [i.e., $500,000 per month in interest] imposed by a stay outweigh[ed] the speculative risk of inconsistent rulings on related issues in the

absence of a stay." Id. Similarly, the estimated $650,000 per month in interest Southern would lose during a stay is concrete. The risk that the Federal Circuit would render a decision in the SNF Appeals that would make discovery of Southern's actual post-2004 SNF storage costs futile is, at best, speculative. There is no pressing need for a stay.

Southern respectfully requests this Court to deny the Government's motion to stay as to the discovery and audit process.

Respectfully submitted,

Dated: August 4, 2008

/s/ M. Stanford Blanton

M. Stanford Blanton
BALCH & BINGHAM LLP
1710 Sixth Avenue North
Birmingham, AL 35203
Tel.: 205-226-3417
Fax: 205-226-8798

*COUNSEL OF RECORD FOR PLAINTIFFS*

Of Counsel:

Ed R. Haden
Peter D. LeJeune
K.C. Hairston
BALCH & BINGHAM LLP
1710 Sixth Avenue North
Birmingham, AL 35203
Tel.: (205) 251-8100
FAX: (205) 226-8798

Ronald A. Schechter
Jeffrey L. Handwerker
Matthew M. Shultz
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1202
Tel.: (202) 942-5000
FAX: (202) 942-5999

**CERTIFICATE OF FILING**

The undersigned hereby certifies that on August 4, 2008, the foregoing PLAINTIFFS ALABAMA POWER COMPANY, GEORGIA POWER COMPANY, AND SOUTHERN NUCLEAR OPERATING COMPANY'S OPPOSITION TO DEFENDANT GOVERNMENT'S MOTION TO STAY was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ M. Stanford Blanton

M. Stanford Blanton
BALCH & BINGHAM LLP
1710 Sixth Avenue North
Birmingham, AL 35203-2015
Telephone: (205) 251-8100
Facsimile: (205) 226-8798

COUNSEL OF RECORD FOR ALABAMA POWER COMPANY; GEORGIA POWER COMPANY; AND SOUTHERN NUCLEAR OPERATING COMPANY, INC.