# In the United States Court of Federal Claims

No. 08-237 C

(Filed January 12, 2010)

ALABAMA POWER COMPANY,    )
GEORGIA POWER COMPANY,    )
and SOUTHERN NUCLEAR    )
OPERATING COMPANY, INC.    )
                Plaintiffs,    )
      v.    )
    )
THE UNITED STATES,    )
                Defendant.    )

## ORDER

This Order addresses plaintiffs' Motion for a Protective Order Regarding Discovery of Events Prior to January 1, 2005 [39] filed October 5, 2009. Defendant's Opposition [40] was filed on October 22, 2009, and plaintiffs' Reply [44] on November 3, 2009.

Plaintiffs seek to prevent the government from further discovery regarding events prior to January 1, 2005 that were, or could have been subject to discovery and resolved by the judgment in *Southern Nuclear Operating Co. v. United States*, 77 Fed. Cl. 396 (2007), *recons. denied*, 79 Fed. Cl. 135 (2007) ("*Southern I*"). *Southern I*, currently on appeal to the Federal Circuit, addressed claims and awarded damages for net mitigation costs through December 31, 2004 for the Department of Energy's ("DOE's") partial breach of contract to remove and dispose of spent nuclear fuel ("SNF") and high-level radioactive waste ("HLW"). That appeal was stayed pending the decision by the Federal Circuit in *Nebraska Public Power*, discussed *infra*. The present action ("*Southern II*") was brought for costs incurred after December 31, 2004 for "the Government's continued failure to perform its obligations under the Standard Contracts after December 31, 2004." (Comp. ¶ 7.) *Seriatim* actions in these as well as numerous other SNF cases comply with the Federal Circuit's direction in *Indiana Michigan* that these partial breach claims are limited to incremental costs incurred, not future expenses. *Ind. Mich. v. United States*, 422 F.3d 1369, 1376-77 (Fed. Cir. 2005)

Following a five week trial in *Southern I*, the court found that DOE's announced failure to begin full performance of the Standard Contracts, caused plaintiffs' to rerack spent fuel pools, construct dry storage facilities and purchase and load casks at plaintiffs' nuclear reactors at Plant Farley, Plant Vogtle and Plant Hatch, and that these expenditures would not have been made if DOE had performed at any reasonable pick-up rate, defined as between 2000 and 3000 MTU annually. The court further concluded that even if DOE had performed at the levels of the 1991 ACR advocated by the government at trial, those decisions and expenses would not have been made. Accordingly, only incremental costs were awarded for the time period involved. Apparently, *Southern II* includes additional cask purchases and loading and other expenses of maintaining the dry storage facilities, incurred after December 31, 2004.

On September 4, 2009, in *Southern II*, plaintiffs were served with three separate RCFC 30(b)(6) deposition notices (one for each of the three nuclear power plants), each containing more than 30 topics. Plaintiffs contend that a protective order is necessary because certain of the noticed topic areas: (1) concern discovery into areas precluded by res judicata and collateral estoppel; matters that were resolved or could have been raised and resolved in *Southern I*; or (2) are duplicitous – the subject of previous discovery or testimony in *Southern I* or other SNF cases available to the government for possible use in *Southern II*. As to the latter point, plaintiffs point to a similar motion made by the government in *Southern I* to quell the raft of depositions of certain government witnesses, a motion in large part granted. The discovery limitations granted to the government should likewise be given to plaintiffs who now present a similar situation plaintiffs argue.

Requested discovery of witnesses who have been deposed and examined numerous times, would be onerous and inefficient; accordingly, there is good cause to limit discovery in this regard. RCFC 26(c)(1).

Responding to the first point, the government predicts that res judicata and collateral estoppel will be limited because *Southern I* will be remanded for the court to specifically apply the acceptance/performance levels in the 1987 ACR[1] process, a barometer of the non-breach world adopted *sua sponte* by the Federal Circuit in

---

[1] The 1987 ACR rates are 1200 MTU annually for five years starting in 1998, increasing to 2000 MTU in 2003 and then to 2650 for 2004 through 2007.

*Pacific Gas & Electric Co. v. United States*, 536 F.3d 1282 (Fed. Cir. 2008), and recently in *Carolina Power and Light Co. v. United States*, 573 F.3d 1271 (Fed. Cir. 2009).  In *Carolina Power & Light,* the Federal Circuit declined to apply the 1987 ACR rates to record data as urged by the utility, remanding to the trial court to do so. Thus, the government concludes, *Southern I* will also be remanded because specific application of the 1987 ACR rate is lacking.

The performance levels of the 1987 ACR are greater than the 1991 ACR rates applied by the undersigned in *Southern I*; that is, DOE would remove fewer assemblies from plaintiffs' spent fuel pools under the 1991 ACR rate used in *Southern I* than the 1987 ACR rate that would be applied by the undersigned under the government's hypothetical remand, which would bolster, not diminish plaintiffs' position.  In *Southern I*, the court credited record evidence that in the non-breach world of the 1991 ACR, plaintiffs would not have run out of storage space and would not have built dry storage.  It is obvious that with more SNF collected, plaintiffs still would not have run out of storage space and still would not have built dry storage. The court's finding that plaintiffs would not have incurred the partial breach expenses awarded if DOE would have performed in the non-breach world of the less robust 1991 ACR rate would, *a fortiori,* extend to the non-breach world of the subsequently-adopted 1987 ACR rate, with DOE picking up more SNF, leaving plaintiffs with more room in their spent fuel pools, decreasing any impetus or need to build additional storage.

The government also predicted possible impact on *Southern I and II* of a then-pending motion for rehearing and rehearing *en banc* in *Carolina Power & Light*.  In *Carolina Power & Light* the Federal Circuit again chose the 1987 ACR process as the hypothetical non-breach world for ascertaining costs that would have been incurred in that world, to be compared to the foreseeable costs caused by DOE's partial breaches, to the extent established with reasonable certainty, to determine incremental costs.  The petition for rehearing in *Carolina Power* was denied on November 3, 2009, dissipating a possible change in the level of performance in the non-breach world advocated by the government.

The government also points to *Nebraska Public Power*, concerning the unavoidable delays clause of the Standard Contract.  A decision in that case, now rendered, it is asserted, might impact either the government's liability and/or the amount of damages, which in turn could affect the disposition of the appeal of

*Southern I*, and the merits of *Southern II,* because an intervening change in law is an exception to the constraints of res judicata and collateral estoppel.

Plaintiffs respond that any decision in *Nebraska Public Power* concerning the unavoidable delays clause would not impact *Southern I* because the undersigned concluded the government waived any argument in that regard.

In sum, plaintiffs conclude that the government had its chance to argue or at least seek discovery specifically about the 1987 ACR rate in *Southern I*, and dictates of res judicata and collateral estoppel would preclude a second round of discovery. Accordingly, even if the Federal Circuit remands *Southern I*, the court would reaffirm its findings as within the range of performance already analyzed, and no additional discovery would be needed. Regardless, however, these are matters to be addressed if at all, in *Southern I*.

There may be instances where costs sought in *Southern II* (or costs that would have been incurred in the non-breach world during the times relevant in *Southern II*) have their roots in events or decisions made or considered before January 1, 2005, in which instance discovery may be appropriate. However, even in such instances, to the extent that prior discovery or testimony in *Southern I* or otherwise has been fulsome, it would be available to the government, and a limited protective order is appropriate. Separately, to the extent that the discovery sought extends to decisions or expenditures in either the breach or the non-breach world that were resolved (or could have been resolved) in *Southern I* and/or were the subject of previous discovery available to the government for use in *Southern II*, a limited protective order is warranted.

Narrowing its request for a protective order somewhat in their Reply, plaintiffs do not object to the government:

> asking questions in the RCFC 30(b)(6) depositions regarding pre-2005 events and decisions related to expenditures Southern made during the 2005 to 2008 time frame of this case – *Southern II*. Southern does object to the Government seeking to re-try *Southern I* inside this case – *Southern II* – by asking questions regarding damages incurred prior to 2005 that are the subject of a final judgment. *Res judicata* and collateral estoppel bar the Government from reopening the *Southern I* judgment

and decided issues.   Moreover, after providing its nuclear plant management and engineering personnel for deposition and trial testimony regarding pre-2005 damages in *Southern I*, it would be unduly burdensome to require Southern to present them again for deposition on that topic unless and until the United States Court of Appeals for the Federal Circuit *Southern I* remands for a determination of issues requiring such testimony.

(Pls.' Reply to Def. Gov't Resp. to Pls.' Mot. for Protective Order [44] at 1.)

Accordingly, it is **ORDERED**:

(1) That the protective order to preclude questioning at the RCFC 30(b)(6) depositions shall be **GRANTED** to the extent of inquiry relating to pre-January 1, 2005 costs in either the breach or the non-breach world, and to the extent that prior deposition or trial testimony is reasonably complete, in that there exists a reasonably complete response in prior depositions or testimony by the deponent or the person designated, except that prior depositions or testimony may be referenced for foundation, context, or clarification purposes when needed to obtain responses to questions addressed to new subjects;

(2) That except to the extent **GRANTED** in (1), plaintiffs' motion for a protective order addressed to the RCFC 30(b)(6) Notices attached thereto is, otherwise, **DENIED**.


s/ James F. Merow
James F. Merow
Senior Judge