# In the United States Court of Federal Claims

No. 08-237 C
(**Originally Filed Under Seal:** June 6, 2013)
(**Filed:** June 21, 2013

| | |
|---|---|
| ALABAMA POWER COMPANY, | ) |
| GEORGIA POWER COMPANY, | ) |
| and SOUTHERN NUCLEAR | ) |
| OPERATING COMPANY, INC. | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

## ORDER on Motion to Strike Expert Report[1]

Defendant's Motion to Strike Plaintiffs' Expert Report (ECF No. 93) was filed under seal on April 3, 2013. Plaintiffs' Response to the Government's Motion to Strike the Expert Report of Jesse Funches (ECF No. 94) was filed on April 16, 2013. Defendant's Reply (ECF No. 95) was filed on April 26, 2013. The underlying dispute arises out of plaintiffs' Motion to Compel and to Permit Designation of Additional Expert(s) (ECF No. 79) on which the court held a telephone conference and a hearing, and the court then allowed limited additional discovery including interrogatories, requests for production of documents and the designation of an additional expert witness (Tr., ECF No. 89 & Order, ECF No. 86). The parties disagree over whether the designation of plaintiffs' expert witness was within that allowance.

During the pendency of this phase two spent nuclear fuel (SNF) case, and following close of discovery,[2] the Federal Circuit issued its opinion in *Consolidated*

---

[1] This Order was originally filed under seal on June 6, 2013. (ECF No. 97.) The parties were afforded an opportunity to propose redactions. As no redactions were proposed, a public version of the Order is now being filed.

[2] The court's January 9, 2009 scheduling order set a May 29, 2009 deadline for plaintiffs
(continued...)

*Edison Co. of New York, Inc. v. United States*, 676 F.3d 1331 (Fed. Cir. 2012). This decision provided further guidance relating to the burden of proof and other matters, particularly concerning any recovery of the substantial Spent Fuel Storage and Reactor Decommissioning fees (SFS/RD) paid by nuclear utilities to the Nuclear Regulatory Commission (NRC).

Plaintiffs filed a Motion to Compel and to Permit Designation of Additional Expert(s) (ECF No. 79) on May 14, 2012, seeking an order compelling defendant to: identify individuals with knowledge of plaintiffs' claims for, and the defendant's defenses to, recovery of NRC fees; and to make an RCFC 30(b)(6) witness available to testify in response to topics 9, 10 and 11 of an RCFC 30(b)(6) deposition notice served in January, 2012. Those topics were:

> 9. The rulemaking that changed the annual fee under 10 C.F.R. Part 171 for NRC generic activities charged to licensees beginning in fiscal year 1999.
> 10. The budgeted resource allocations relate [sic] to the various NRC fee classes, and planned activities relating to those budgeted resource allocations.
> 11. Any and all pertinent information relating to NRC fees and whether the Government has or can identify if any adjustments need to made [sic] to the amount claimed by Plaintiff(s).

(Pls.' Mot. Compel, Ex. 1 at 3, ECF No. 79-1.)

Plaintiffs' Motion also sought to designate an additional expert(s) to address the Federal Circuit's burden of proof on the recovery of NRC fees in SNF cases. The Motion stated (in part):

> Recent Federal Circuit decisions reflect a change in law in the proof required to recover or defend against the recovery of NRC fees. *See* [*Consolidated Edison*]; *see also Boston Edison Co. v. United States*.

---

² (...continued)
to disclose expert reports for damages from 2005 through 2008. (Order, ECF No. 31.) The deadline for plaintiffs to supplement previous damages and expert disclosures to include January 1, 2009 through December 31, 2013, was July 29, 2011. (Order, ECF No. 63.)

> Although courts previously accepted on a *res ipsa* basis that the SFS/RD fee was caused by the Government's breach, in *Consolidated Edison*, the Federal Circuit refused recovery of NRC fees to a utility, holding that the utility failed to establish a direct link between the breach and the rule change.
>
> Although Plaintiffs disagree with the Federal Circuit's decision in *Consolidated Edison* as it relates to the burden of proof for recovery of NRC fees, Plaintiffs nevertheless intend to comply with its dictate. Testimony from one or more experts would be helpful to the Court in establishing the link between the fee change and the breach, and further can provide additional insight into the allocation of fees as contemplated by *Boston Edison*. When the deadline to designate experts and exchange reports expired, Plaintiffs were neither aware of the Government's defenses nor the clarification of the law relating to the burden of proof. Thus, Plaintiffs were not in the position to identify an expert on this issue. Therefore, Plaintiffs now seek to designate one or more experts to address the burden of proof set forth recently in *Consolidated Edison* and *Boston Edison*. At least one other trial court has allowed additional discovery in light of these decisions. *See, e.g., Entergy Gulf States, Inc. et al. v. The United States*, No. 03-2625C, 2012 WL 1499044 (Fed. Cl. Apr. 27, 2012).

(Pls.' Mot. Compel, Designate Expert(s) 5, ECF No. 79.)

Defendant's Opposition (ECF No. 83) contended that its discovery responses were fulsome and that additional experts were not warranted because *Consolidated Edison* was not a change in law as it did not overturn any existing precedent; *Boston Edison* was also not a change in law and was issued more than seven months before the close of discovery; plaintiffs already had an expert report on NRC fees; and defendant would be severely prejudiced if additional experts were allowed.

The bulk of plaintiffs' Reply (ECF No. 84) addresses and counters points concerning discovery obligations and interpretations of various communications between counsel concerning the same. The Reply also addresses defendant's position that additional experts were not necessary because the recent Federal Circuit cases did not alter precedent as follows:

> Prior to the Federal Circuit's recent decision issued in 2012, the Court of Federal Claims accepted arguments made by utilities in spent fuel cases and allowed recovery of NRC fees at the trial court level based on the notion that causation could not be disputed based on a quasi *res ispsa* theory that logically, it stands to reason, that these fees would not exist had the Government not breached. This approach was recently rejected. *Compare Boston Edison Co. v. U.S.*, 93 Fed. Cl. 105 (2010) (permitting recovery and accepting logical argument that the fee would not exist had the Government not breached) and *Consolidated Edison Co. of New York, Inc. v. U.S.*, 92 Fed.Cl. 466 (2010) (assuming causation) *with Consolidated Edison Co. v. New York, Inc. v. United States*, 676 F.3d 1331 (Fed. Cir. 2012); *see also Boston Edison Co. v. United States*, 658 F.3d 1361 (Fed. Cir. 2011). In these recent decisions, the Federal Circuit arguably set forth a new standard, not applied in the earlier cases, for proving causation for claims seeking recovery of the SFS/RD fee. Plaintiffs can meet this standard with expert testimony, likely from former NRC employees, and will do so if permitted by the Court.

(Pls.' Reply in Support, Mot. Compel, Designate Expert(s) 7-8, ECF No. 84.)

There was considerable discussion concerning these matters during the telephone conference held on June 26, 2012. Specifically, addressing plaintiffs' request to designate additional expert(s), colloquy included the following:

> MS. BRENNAN: Okay, Your Honor, that [order allowing interrogatories] gets us part of the way. That still leaves us with – up in the air the question of whether or not we can designate an expert. It would be very, very limited, Your Honor, just on the causation issue for the fee change, the SFSRD fee.
>
> THE COURT: I certainly have no objection to having the expert identified and testifying in that regard. I'm not sure of what weight would be given to the testimony. It depends on who the expert is and what the basis is for the testimony, obviously, but sure.

(Tr. 39-40, ECF No. 89.)

Objecting, the government pointed out that plaintiffs already had an expert on causation for NRC fees, the case had been going on for too long already and this additional discovery, including another expert for plaintiffs, would be prejudicial.

Response in part was as follows:

MS. BRENNAN: Your Honor, we are trying to respond to two things. First of all, the government contends that our expert, Mr. Metcalf[e], is not qualified to testify about causation on this issue, essentially and okay, well, if that's the case, then let us designate someone who is if you don't think that he is.

We're also responding to the April 16, 2012 Federal Circuit decision. I mean, that is, you know, the timing of it is unfortunate that it came after the close of discovery, but it did. But it's before trial, and so it's not too late to respond to it. It's going to be on the very discrete issue of causation.

In theory, the government shouldn't have to obtain an expert because they have the NRC, and they have access to the people who are currently still at the NRC and can – as they said, there are dozens of people who know about these issues. And instead of getting an expert, if they want to put somebody up, they can put somebody up to topic number nine in the 30(b)(6) deposition notice. They don't have to have an expert. They've got the NRC right there for them. We don't have that and we'd like to have an expert who can talk about it who's a former NRC employee.

THE COURT: Well, one thing I have learned from the spent fuel cases is that sometimes when you don't cover something, you get remanded and you have to end up spending more time and effort on it. What I'd like to do is any issues raised, whether timely or not, I'd like to get resolved. So I don't think it will add a great deal to the case to have one expert nominated by the Defendant and one by the Plaintiff on the fee issue in terms of the causation aspect of it.

      And if the Circuit means that it can only be proven by documents, as I say, I'm not sure what weight would be given in the ultimate ruling, but at least we covered the issues, so we wouldn't get a remand on that point. So I think, yes, both parties can designate experts to cover the remand question and hopefully the written interrogatories can solve the problem on getting the facts.

(*Id*. at 41-43.)

      Also, the court issued an Order (ECF No. 86) which granted plaintiffs' Motion to Compel to the extent of allowing no more than ten interrogatories and three RCFC 34 requests for production of documents on topics 9, 10 and 11 listed above. Defendant was ordered to provide to plaintiffs copies of discovery produced in response to *Entergy Gulf States, Inc. v. United States*, No. 03-2625C, 2012 WL 1499044 (Fed. Cl. April 27, 2012). Plaintiffs were also permitted to designate an expert "as to this document production and interrogatory response within ten (10) business days after completion of discovery." Defendant was given the right to depose that expert and designate its own, who also would be subject to deposition by plaintiffs. The court indicated its availability to resolve any difficulties.

      Subsequently, plaintiffs promulgated the interrogatories and requests for production authorized. Responses prompted further controversy over a protracted period of time, with final responsive documents produced by the government on March 5, 2013. (Def.'s Mot. Strike 3, ECF No. 93.) Notwithstanding that statement, in its Reply, defendant represented that additional responsive documents would be forthcoming.[3/]

---

    [3/]    The Government produced today three additional documents that relate to the manner in which NRC staff charged their time in 2005 and 2006, including descriptions of the NRC's planned activities and associated time-keeping codes. While the Government's March 5, 2013 production included similar documents covering the years before 2005 and after 2006, the current production fills in a gap in that production that resulted from the NRC's inability, initially, to locate the documents for 2005 and 2006. Additionally, as we discussed with Southern's counsel, the NRC's Chief of Records and Archives recently informed the Government that documents potentially related to the NRC's fee calculation process may be

(continued...)

Accordingly, plaintiffs designated Mr. Jesse Funches, a former Chief Financial Officer of the NRC, as an expert on causation for the NRC fee changes. Mr. Funches issued an Expert Report on NRC Annual Fee For Spent Fuel Storage/Reactor Decommissioning on March 13, 2013.[4]

According to defendant's Motion to Strike, Mr. Funches's expert report offers two principal opinions: (1) a causal link exists between DOE's delay in accepting SNF and the NRC's creation of the SFS/RD fee in 1999 (causation opinion); and (2) a percentage of the SFS/RD fee from 2005 through 2013 is attributable or caused by the proliferation of dry storage necessitated in major part because of DOE's delay. Striking is appropriate, defendant reasons, because these opinions are not dependant on the discovery responses recently provided; and secondly, the report is beyond the scope of the court's order because it is based on publicly-available information, not any documents recently produced.

Defendant asserts:

> Mr. Funches's causation opinion is beyond the scope of this Court's June 27, 2012 order because it does not address or rely upon the document production or interrogatory responses, as required by that order. Order, Dkt. 86, June 27, 2012.
>
> Similarly, Mr. Funches's calculation opinion does not rely on the information or documents produced by the Government in response to Southern's discovery requests. A100. Instead, as he states in his report, he relied entirely upon "the work papers prepared by the [Office of the Chief Financial Officer] to support each year's annual fee rule, the

---

[3] (...continued)
located in the NRC's archives in Suitland, Maryland. The Government is seeking to access these materials in order to determine if they are responsive to Southern's extremely broad document requests. *See* Def. App., Dkt. 93-1, at A148-49.

(Def.'s Reply 8 n.6, ECF No. 95.)

[4] That expert report is included in the Appendix to Defendant's Motion to Strike. (Def.'s Mot. Strike A89-142, ECF No. 93-1 (sealed).)

- 7 -

> description of the programs in the NRC annual budget submission to Congress, and [his] knowledge and experience with the NRC budget structure and fee allocation methodology . . . ." A98. The fee rule work papers and budget submissions Mr. Funches refers to were publicly-available to Southern well before the Government's responses to Southern's discovery requests. See A102-103. As such, Mr. Funches's calculation opinion is beyond the scope of the Court's June 27, 2012 Order and should be stricken.
>
> Moreover, Southern cannot plausibly claim that Mr. Funches's report is based upon the Government's recently produced documents because his report in this case is nearly identical to the report he issued in another spent nuclear fuel case, *Energy Northwest v. United States*, No. 11-447C (Fed. Cl.). In *Energy Northwest*, Mr. Funches issued his report on February 15, 2013 – 23 days before the Government produced additional documents in response to Southern's requests. Accordingly, the inescapable conclusion is that Southern used its supposed need for additional discovery to justify its untimely designation of Mr. Funches nearly four years after the Court's May 2009 deadline for disclosure of Southern's expert reports. The Court should not countenance Southern's dilatory actions in this regard and should strike Mr. Funches's expert report in its entirety as beyond the scope of the Court's June 27, 2012 Order.

(Def.'s Mot. Strike 5, ECF No. 93.)

Separately, defendant reminds that plaintiffs sought the additional expert outside of the discovery period only "'to address the burden of proof set forth recently in *Consolidated Edison* and *Boston Edison*'" which plaintiffs characterized as a "'change in law.'" (*Id*. at 2 (citing Pls.' Mot. 5-6, ECF No. 79).) Neither of Mr. Funches's opinions address that burden of proof according to defendant, adding that the Federal Circuit in *Consolidated Edison* now requires public statements by the NRC establishing a direct link between DOE's breach and the 1999 rule change. No such documents were produced by the government in recent production or otherwise, and Mr. Funches's report does not cite any.

As for causation for NRC fees, defendant also points to similarity between Mr. Funches's recent expert report and that of Mr. Metcalfe.

| **Assessment of Damages, Kenneth P. Metcalfe, Kimberly R. Reome, May 29, 2009** | **Expert Report on Nuclear Regulatory Commission Annual Fee For Spent Fuel Storage/Reactor Decommissioning, Jesse L. Funches, March 13, 2013** |
|---|---|
| **Causation:** "Had DOE performed in accordance with its contractual obligation, Southern would not have incurred NRC fees associated with NRC activity relating to onsite spent fuel storage, and those costs are therefore included in Southern's damages." A26. | **Causation:** "If there had not been the increased need for additional on-site spent fuel storage because of DOE's breach of the Standard Contract, the NRC would not have assessed a fee to recover its generic regulatory costs for out-of-pool storage on all Part 50 reactor licensees, but instead of would have continued to assess a fee to recover those costs only on licensees that stored fuel under a Part 72 License." A 91. |

(Def.'s Mot. Strike 9, ECF No. 93.)

Defendant concludes that:

[T]he only discernible difference between Mr. Funches's report and Southern's May 29, 2009 report is that Mr. Funches uses slightly differently percentages than Mr. Metcalfe and Ms. Reome did to calculate the percentage of the [SFS/RD] fee that Mr. Funches believes relates to dry fuel storage. *Compare* A100, Funches Expert Report at 12 *with* A143, table from Metcalfe/Reome May 29, 2009 Report and A144, table from Metcalfe/Reome July 29, 2011 Report. This slight difference, however, was wholly unrelated to the Government's recent discovery responses and the *Consolidated Edison* and *Boston Edison* Federal Circuit decisions.

(*Id.*)

Any similarities aside, under the guidance of *Consolidated Edison*, a causation opinion/admission from an NRC insider during relevant time periods might be accorded greater weight and is closer akin to contemporary public statements by the NRC the government claims are required.

Plaintiffs describe Mr. Funches's report as concluding: (1) that there is a causal link between the rulemaking that changed the 10 C.F.R. Part 171 annual fee for NRC generic activities charged to licensees beginning in fiscal year 1999 and the Government's breach of the Standard Contract; and (2) costs recouped by the SFS/RD Fee that are related to dry spent fuel storage, reactor spent fuel pool storage, and reactor decommissioning. Plaintiffs also disagree with defendant's reading of *Consolidated Edison*, asserting that the decision did not hold that a SNF plaintiff must meet its causation burden solely by NRC public statements. Rather, the Federal Circuit held that neither the NRC public statements nor other evidence in the record established requisite causation. The Federal Circuit's holding was based on a failure of proof in that specific case. *Consol. Edison*, 676 F. 3d at 1338 ("ENIP has failed to show that the 1999 rule change was the result of DOE's breach."). Plaintiffs want to cross that causation hurdle with the testimony of Mr. Funches, who was Chief Financial Officer of the NRC at the time of the 1999 rule change.

Plaintiffs claim as irrelevant and particularly disingenuous the government's noting of "similarities" between the report of Mr. Funches and that of the prior report of Mr. Metcalfe. As the government previously suggested, the opinions offered by plaintiffs' economics experts are insufficient to satisfy plaintiffs' burden in that regard.

Adopting the government's construction of this court's June 27, 2012 Order to allow expert testimony only as to interrogatory responses and document production by the government, would lead to placing the substance of Mr. Funches's testimony squarely within the government's control which could severely restrict the scope of his testimony by either artificially limiting document production, or by artfully crafting responses to interrogatories (or both). The government stated in its Motion to Strike, "[y]et in response to Southern's discovery requests, the Government produced no documents containing public statements establishing a link (direct or otherwise) between DOE's breach and the 1999 rule change, and Mr. Funches's does not list any such documents as 'reviewed and considered in connection with preparation of [his] report.'" (ECF No. 93 at 6-7 (quoting expert report).) Plaintiffs conclude such a result would be a "procedural whipsaw;" according to the government, plaintiffs' earlier experts did not meet *Consolidated Edison* causation requirements which "did not exist when their reports were filed, and its supplemental expert would be unable to meet that precedent because the Government chose not to produce helpful documents." (Pls.' Resp. 9, ECF No. 94.)

The court is not passing on the adequacy of Mr. Funches's opinion nor whether it meets the requirements of *Consolidated Edison.* That is a matter reserved for trial on the merits in which the weight of the respective expert reports can be measured.

There is no prejudice. Mr. Funches could be a fact witness, perhaps on rebuttal, and as a former government employee, the nature of his knowledge and testimony would not be a surprise to the government. This is particularly so in that a trial date has not been set.

Furthermore, Mr. Funches has recently been added as an expert witness in several other SNF cases concerning the allocation and causation of damages for NRC fees. In *System Fuels, Inc. v. United States*, No. 03-2621C (Judge Williams) an Unopposed Motion to Permit Designation of an Additional Expert Witness was filed on May 22, 2013 (ECF No. 125), reciting the government's statement that it "'will not oppose a motion for leave to permit the designation of Mr. Funches as an additional expert,' but reserves all rights to challenge Plaintiffs' underlying claim for NRC fees." That Motion was granted on May 23, 2013. (ECF No. 126). *See also Entergy Gulf States, Inc. v. United States*, No. 03-2625C, 2012 WL 1499044, at *2 (Fed. Cl. Apr. 27, 2012) (granting plaintiffs' motion to compel NRC fees-related discovery in light of *Boston Edison Co. v. United States*, 658 F.3d 1361 (Fed. Cir. 2011) and *Consolidated Edison Co. of New York, Inc. v. United States*, 676 F.3d 1331 (Fed. Cir. 2012)); *Energy Northwest v. United States,* No. 11-447C (Damich, J.) (granting an unopposed motion for an additional expert disclosure outside the deadline for initial expert disclosure although the government reserved the right to object to the expert report on all other grounds). As relevant here, the motion in *Energy Northwest* filed on February 27, 2013, recites:

> At the time of EN's initial expert disclosures in March 2012, the Federal Circuit had not yet rendered its decision in *Consolidated Edison Co. of N.Y. v. United States*, 676 F.3d 1331 (Fed. Cir. 2012), which provided further guidance on the issue of damages associated with payment of the SFS/RD Fee. In light of that decision, as well as EN's ongoing efforts to identify and prepare support for its recovery of damages associated with the SFS/RD Fee, EN identified Mr. Jesse L. Funches, former Chief Financial Officer of the NRC. Mr. Funches was directly involved in the NRC's adoption of the SFS/RD Fee. EN anticipates that Mr. Funches

will provide both fact and expert testimony to support EN's SFS/RD Fee claim in this case.

*Energy Northwest v. United States*, No. 11-447C, Unopposed Mot. Additional Expert Disclosure 2, ECF No. 30.

**ACCORDINGLY**, Defendant's Motion to Strike Plaintiffs' Expert Report (ECF No. 93), and defendant's request for oral argument contained in its Reply (ECF No. 95), are **DENIED.**


    s/ James F. Merow
    James F. Merow
    Senior Judge