# In the United States Court of Federal Claims
No. 08-237 C
(Filed November 8, 2013)

| | |
|---|---|
| ALABAMA POWER COMPANY, | ) |
| GEORGIA POWER COMPANY, | ) |
| and SOUTHERN NUCLEAR | ) |
| OPERATING COMPANY, INC. | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

## ORDER

On October 23, 2013, the government filed four motions in limine, asking the court to exclude: (1) the testimony of Jeffrey S. Merrifield, *see* Doc. 113; (2) the expert testimony of Jesse L. Funches, *see* Doc. 114; (3) the testimony of Kenneth P. Metcalfe, *see* Doc. 117; and (4) evidence regarding Southern's private fuel storage claim, *see* Doc. 118. The court will address each in turn.

### I.   MOTION TO EXCLUDE THE TESTIMONY OF JEFFREY S. MERRIFIELD

The government asks the court to exclude the testimony of Jeffrey S. Merrifield because: (1) the plaintiffs failed to disclose Mr. Merrifield as a possible witness until six weeks before trial, and (2) his testimony is irrelevant. *See* Doc. 113.

Under Court of Federal Claims Rule 37(c)(1), "[i]f a party fails to . . . identify a witness as required by RCFC 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Rule 26(a) requires the disclosure of witnesses "that the disclosing party may use to support its claims or defenses," while Rule 26(e) imposes the obligation of supplementing initial disclosures as necessary.

1

It is undisputed that Mr. Merrifield was not disclosed in the plaintiffs' initial disclosures under Rule 26(a), or in response to any written discovery served by the government. In fact, he was not disclosed as a witness until plaintiffs' filed their witness list pursuant to this court's scheduling order, on September 30, 2013. *See* Doc. 101; Doc. 104. In their filing, plaintiffs stated that: "Mr. Merrifield may testify regarding the factors that caused the NRC to adopt the SFS/RD Fee. As necessary, Mr. Merrifield may also testify about other areas that arise before or during trial and about which he has knowledge." Doc. 104 at 6; Doc. 112 at 6.

Because Mr. Merrifield was not disclosed as a witness during the normal course of discovery, but has been included on plaintiffs' list at this late date, plaintiffs must show that his inclusion is either harmless or substantially justified. The court finds plaintiffs have failed to make this showing.

First, the untimely disclosure of Mr. Merrifield has prejudiced the government. Plaintiffs offer Mr. Merrifield as a witness to support their position on the hotly contested issue of NRC fees, and "about other areas that arise before or during trial and about which he has knowledge." This statement opens the door to a wide range of potential testimony that the government has not been given the chance to explore. In order to fairly present evidence at trial, the government is entitled to discovery relating to Mr. Merrifield's knowledge and expected testimony. *See* Court of Federal Claims Rules, Appendix A, ¶13(b) ("Any witness whose identity has not been previously disclosed shall be subject to discovery."). Reopening discovery at this stage is impractical and would not afford the government a meaningful opportunity to probe Mr. Merrifield's relevant knowledge.

Plaintiffs claim that because Mr. Merrifield's existence was known to both parties long ago, their failure to supplement initial disclosures was harmless. *See* Doc. 121 at 8-9. The court disagrees. Rule 26(a) specifically requires the disclosure of witnesses "that the disclosing party *may* use to support its claims or defenses." (emphasis added). As such, when the parties know of a potential witness, and that witness is not disclosed, it is a reasonable inference that the witness will not be used to support claims or defenses. It may be true that plaintiffs did not intend to use Mr. Merrifield to support its claims or defenses until the government filed its motion for summary judgment, *see* Doc. 121 at 9, but that fact does not change the resulting handicap to the government's case.

In addition, plaintiffs' failure to disclose Mr. Merrifield was not substantially justified. Plaintiffs argue that because they did not decide to use Mr.

2

Merrifield as a witness until after the government filed its motion for summary judgment, it should be excused from the disclosure deadlines. *See id.* The court is not insensitive to the fact that the government's argument on summary judgment caused plaintiffs to re-assess their witness list. But in reality, the plaintiff knew of Mr. Merrifield's existence years ago, and could have included him long before now if they considered his testimony potentially relevant to proving their claims. On balance, the harm caused to the government by allowing Mr. Merrifield's testimony weighs more heavily than the justification plaintiffs have offered for failing to disclose him as a witness before September 30, 2013.

For the foregoing reasons, the government's motion *in limine* to exclude Mr. Merrifield's testimony is **GRANTED.**

II. **MOTION TO EXCLUDE THE EXPERT TESTIMONY OF JESSE L. FUNCHES**

Plaintiffs intend to call Jesse L. Funches as an expert regarding "the factors that caused the NRC to adopt the SFS/RD Fee," "the percentages of the SFS/RD fee that are attributable to the NRC's generic dry storage activities, generic wet storage activities and reactor decommissioning activities for the years 2005-2010," and "the contents of and basis for his expert report and work papers." *See* Doc. 104 at 4-5; Doc. 112 at 4-5.

The government seeks to exclude this testimony for three reasons: (1) the testimony is irrelevant; (2) the testimony will not assist the court; and (3) the testimony is unreliable. *See* Doc. 114 at 6.

A. **RELEVANCY OF MR. FUNCHES'S TESTIMONY**

The government argues that Mr. Funches's testimony is irrelevant because: (1) the documents on which he relies were deemed insufficient to establish causation by the Federal Circuit in *Consolidated Edison*, 676 F.3d 1331 (Fed. Cir. 2012); (2) that Mr. Funches, as the NRC's CFO had no direct authority to affect the rule change; and (3) the explanation for the rule change should be limited to the official statement in the Federal Register. *See* Doc. 114 at 8-10. The court finds that these arguments do not justify a finding that Mr. Funches's testimony is irrelevant.

As an initial matter, the government's reading of *Consolidated Edison*'s holding is unduly restrictive. While the court in *Consolidated Edison* did find that

3

the evidence presented in that case was insufficient to establish causation, it did not find, as a matter of law, that the rule change was not caused by DOE's breach of the Standard Contract. *See Consolidated Edison*, 676 F.3d at 1339 ("These comments are insufficient as a matter of law to demonstrate that the new NRC rules were the result of the government breach."). The court will not assume, before hearing the evidence, that plaintiffs here will also fail to prove causation.

The government next argues that because Mr. Funches was merely the NRC's CFO, and not an acting committee member, his testimony is essentially meaningless. *See* Doc. 114 at 9. The court recognizes that as CFO Mr. Funches was not in a position to make decisions about the rule change. This does not necessarily mean, however, that his testimony has no value. Upon hearing the testimony, the court will give it its due weight and consideration.

Similarly, the court rejects the government's argument that it cannot consider evidence other than the official statements that appear in the Federal Register, to explain the NRC rule change. To support this proposition, the government cites *SEC v. Chenery Corp.*, in which the Supreme Court held that "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." 332 U.S. 194, 196-197 (1947). While the court may ultimately consider this reasoning in weighing Mr. Funches's testimony, it is not directly on point—this court is not reviewing an agency decision in this case. The court will not, therefore, exclude Mr. Funches's testimony on this basis.

### B. ASSISTANCE TO THE COURT

The government argues that Mr. Funches's testimony should be excluded because it will not assist the court. *See* Doc. 114 at 10-11. The court disagrees that matters relating to the NRC fees adoption are necessarily comprehensible to a layperson. In any event, the court is perfectly capable of discounting the value Mr. Funches's testimony should it prove unhelpful.

### C. RELIABILITY OF MR. FUNCHES'S TESTIMONY

The government also claims that Mr. Funches's testimony is so unsupported by the facts as to be unreliable. *See* Doc. 114 at 7-11. In its motion, the government cites to a handful of documents that it considers insufficient to support Mr. Funches's testimony, but does not offer a comprehensive review of the facts

on which he relies to form an opinion. It also recycles its argument that the court in *Consolidated Edison* found that reliance on certain documents alone was insufficient. As explained above, the government's interpretation of the holding in *Consolidated Edison* is unduly limited. The court will not assume, before hearing the evidence, that plaintiffs will fail to establish causation in this case simply because the plaintiffs in *Consolidated Edison* failed to do so. If plaintiffs do not lay the proper foundation for Mr. Funches's testimony, the court will weigh the testimony accordingly. *See McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) ("[W]eaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility.") (citations omitted).

The government next attacks Mr. Funches's testimony as unreliable expert testimony, claiming that it amounts, in reality, to fact testimony. Doc. 114 at 15-16. Mr. Funches's testimony has the markings of an expert—he has written an expert report and provided the work papers on which he bases the opinions that plaintiffs seek to present. *See* Doc. 104 at 4-5; Doc. 112 at 4-5. The critical difference between fact and expert witnesses, is that expert witnesses are permitted to offer opinions that are based on specialized knowledge, rather than the personal knowledge to which fact witnesses are restricted. *See Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000). The court disagrees that NRC rulemaking is necessarily a matter that cannot involve expert, specialized knowledge. And plaintiffs have made a sufficient showing that Mr. Funches's decades-long service at the NRC, including involvement with the rule-making process, position him to speak as an expert on the issues in this case. *See* Doc. 121 at 12-15. If the testimony Mr. Funches actually gives does not qualify as expert testimony, the court will consider (or not consider) it in issuing its ruling after trial.

The government's motion to exclude the testimony of Mr. Funches, is **DENIED.**

### III. MOTION TO EXCLUDE THE TESTIMONY OF KENNETH P. METCALFE

Plaintiffs have designated Mr. Kenneth P. Metcalfe as their damages expert. *See* Doc. 104 at 4; Doc. 112 at 4 (stating that Mr. Metcalfe "may testify regarding Southern's damages, application of the 1987 acceptance rate to the acceptance allocations afforded to Southern, and the contents of and basis for his expert reports, work papers and fuel management models."). The government challenges

this designation on the basis that "Mr. Metcalfe does nothing more than add up dry storage costs that Southern personnel provided to him, without deducting the costs that Southern would have incurred with DOE performance. This quantification does not require expert testimony . . ." Doc. 117 at 7. The government then takes issue with the content of Mr. Metcalfe's testimony, arguing that his calculations do not adhere to his own model, and that his conclusions are contrary to law. *See* Doc. 17 at 11-14, 17-18.

The court rejects the government's argument that the calculation of damages does not require expert testimony, and tends to agree with plaintiffs that the government's position "over-simplifies Mr. Metcalfe's role." Doc. 121 at 16. The costs involved in SNF cases are complex and an expert's opinion as to what costs should and should not be considered damages often proves very useful in sorting out the monetary consequences of the government's partial breach.

The remainder of the government's arguments criticize the methodology that Mr. Metcalfe employs.[1] *See* Doc. 117 at 11-14, 17-19. If the government believes that Mr. Metcalfe's calculations are improper or his methodology is flawed, it will have the opportunity to establish that fact on cross-examination.

The government's motion to exclude the expert testimony of Mr. Metcalfe is **DENIED.**

IV. **MOTION TO EXCLUDE EVIDENCE REGARDING SOUTHERN'S PRIVATE FUEL STORAGE CLAIM**

The government asks the court to preclude plaintiffs from pursuing their claim for private fuel storage costs on the basis of collateral estoppel because recovery was denied in the first phase trial. *See* Doc. 118. Collateral estoppel prevents parties from re-litigating issues provided that the following four conditions are met:

---

[1] The government also seeks to exclude Mr. Metcalfe's opinion on private fuel storage, claiming that it lacks a sufficient factual basis. In its response, the government states that it is not relying on Mr. Metcalfe for this opinion. *See* Doc. 121 at 20 n.7. Therefore, the court need not rule on this portion of the government's motion. If plaintiffs do ultimately rely on Mr. Metcalfe's testimony on this issue, the government may raise this objection at that time.

>(1) the issue is identical to the one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) the plaintiff had a full and fair opportunity to litigate the issue in the first action.

*Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1288 (Fed. Cir. 2012).

First, the issue presented in the second phase of litigation is the same as the issue presented in the first phase—whether plaintiffs may recover costs for investing in and developing private fuel storage and an alternative storage option to on-site dry storage. *See S. Nuclear Operating Co. v. United States*, 77 Fed. Cl. 396, 443 (2007); Doc. 103 at 14 (stating as an unresolved issue for trial "[w]hether Southern's $700,000 investment in PFS is a cost that is directly attributable to the Government's partial breach and therefore recoverable as damages"). That plaintiffs seek a different set of damages in this trial does not change the underlying issues of causation and foreseeability that were decided in the first phase of this case.

Second, the issue was actually litigated in the first phase of the case. As this court's opinion explains at length, several witnesses testified on the issue, documentary evidence was admitted and extensive arguments by the parties were considered. *See S. Nuclear*, 77 Fed. Cl. 443-446. After considering all of the evidence and argument, the court concluded that "on this record, foreseeability and substantial causation were not established." *Id.* at 445.

Third, the determination of this issue was clearly essential to the final judgment in the first trial because after concluding that foreseeability and causation were not proven, the court held that "the investments in PFS are not included in the mitigation damages awarded herein." *See id.* at 446. This decision resulted in the denial of nearly $8.5 million of plaintiffs' requested damages. *See id.* at 443. Such a significant amount does not implicate the concern that the court's previous decision was an "incidental or collateral determination of a nonessential issue." *See Mother's Rest., Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed. Cir. 1983).

Finally, plaintiffs had a fair opportunity to litigate this issue in the first trial, and they do not claim otherwise. As noted above, during the lengthy trial, the court heard testimony from several witnesses and reviewed documentary evidence

7

supporting plaintiffs claim. Therefore, each requirement for collateral estoppel is met.

Plaintiffs claim that, even if all four requirements for collateral estoppel are met, the court should not preclude its evidence relating to private fuel storage due to changes in the facts and the law since the time of the first trial. *See* Doc. 121 at 21. Plaintiffs argue that "changes in facts essential to a judgment . . . will render collateral estoppel inapplicable in a subsequent action raising the same issues." *Id.* (quoting 440 U.S. 147, 159 (1979)). They also contend that "a judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable." Doc. 121 at 21 (quoting *Comm'r v. Sunnen*, 333 U.S. 591, 600 (1948).

As an initial matter, plaintiffs have not demonstrated a change in the facts such that ignoring the principal of collateral estoppel is justified. To support the claim that the facts have changed, plaintiffs cite to actions taken in 2006 and 2008. *See* Doc. 121 at 22. The problem with this reasoning is, primarily, that foreseeability is determined based on the time of contracting. *See Indiana Michigan Power Co. v. United States* 422 F.3d 1369 (Fed. Cir. 2005) (stating that, to be recoverable, damages must have been "reasonably foreseeable by the breaching party *at the time of contracting*") (emphasis added). The parties entered into the contracts at issue in 1983. *See* Doc. 103 at 11. As such, facts or actions that arose after those times are necessarily irrelevant. The plaintiffs have failed to establish any reason to revisit the court's foreseeability decision based on new facts.

Plaintiffs then argue that the intervening decisions in *Pacific Gas & Electric Co. v. United States*, 668 F.3d 1346 (Fed. Cir. 2012), and *Dairyland Power Co-op. v. United States*, 645 F.3d 1363 (Fed. Cir. 2011), justify revisiting this court's earlier decision. The court disagrees. It is clear that both of these cases were decided on the facts relevant to each, and did not change the framework within which such claims should be considered. *See Pacific Gas*, 668 F.3d at 1353 (stating that "[i]n this case, the record contains plausible evidence to support the trial court's determination to award damages for PG & E's evaluation of off-site PFS storage"); *Dairyland Power*, 645 F.3d at 1376 (noting the importance of carefully reviewing the facts to determine whether the utility proved "how much, if any, of its PFS investment was speculative as opposed to mitigation-oriented," because damages resulting from speculation are not recoverable). Plaintiffs also point out that this court allowed damages for private fuel storage in *Wisconsin*

*Electric Co. v. United States*, but again, this decision was made on the specific facts presented to the court at trial.  90 Fed. Cl. 714 (2009).

For the foregoing reasons, the government's motion to preclude evidence regarding plaintiffs' private fuel storage claim is **GRANTED.**

**SO ORDERED.**

s/ James F. Merow
James F. Merow
Senior Judge
